IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JESUS YAHIR ZAVALA ULLOA**, <br><br> Petitioner, <br><br> v. <br><br> **J.L. JAMISON**, *Warden, Federal Detention Center, Philadelphia*, et al., <br><br> Respondents. | CIVIL ACTION <br><br> NO. 26-0813-KSM |

**ORDER**

**AND NOW**, this 20th day of February, 2026, upon consideration of Petitioner Jesus Yahir Zavala Ulloa's Petition for Writ of Habeas Corpus (Doc. No. 1), the Court finds as follows:

1. Petitioner, a citizen of Mexico, entered the United States without inspection near Sasabe, Arizona on December 1, 2023 and was apprehended by the Department of Homeland Security ("DHS"). (*Id.* at 2; Doc. No. 6-1 at 2.) Two days later, Petitioner was determined to be inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I)[1] and served with a Notice and Order of Expedited Removal under 8 U.S.C. § 1225(b)(1)(A)(i)[2]. (*See* Doc. No. 6-1 at 2 (indicating that

---

[1] Section 1182(a)(7)(A)(i)(I) deems "inadmissible" any noncitizen who "at the time of application for admission . . . is not in possession of a . . . valid entry document."

[2] Section 1225 "provides the procedure by which the Government may subject certain 'applicants for admission' to mandatory detention." *Vazquez-Rosario v. Noem*, No. 25cv7427, 2026 WL 196505, at *3 (E.D. Pa. Jan. 26, 2026) (quoting 8 U.S.C. § 1225(a)). Section 1225(a)(1) explains that a noncitizen is deemed an "applicant for admission" if they are "present in the United States" and "have not been admitted or . . . arrived in the United States . . . whether or not at a designated port of arrival." 8 U.S.C. § 1225(a)(1). Section 1225(b), in turn, "requires mandatory detention of two types of 'applicants for admission'": (1) those who qualify for expedited removal (i.e., removal from the United States without further hearing or review), and (2) those who are "seeking admission" but not "clearly and beyond a doubt entitled to be admitted." *Vazquez-Rosario*, 2026 WL 196505, at *3–4 (quoting 8 U.S.C. § 1225(b)(2)(A)). Here, the Government relies on the former category, not the latter.

Under Section 1225(b)(1), a noncitizen may be subject to expedited removal if two criteria are met: (1) the noncitizen is "inadmissible for lack of proper entry documents or because they engaged in

Petitioner is inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") and ordering removal under Section 235(b)(1) of the INA).)  However, because Petitioner demonstrated a credible fear of returning to Mexico, the expedited removal order was vacated a few days later, and Petitioner was given a Notice to Appear for removal proceedings pursuant to 8 U.S.C. § 1229a[3].  (Doc. No. 6-2 at 2.)  The Notice to Appear, like the prior order, charged Petitioner as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and added a charge for inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i)[4].  (*Id.*)  One week later, on December 20, 2023, Petitioner was paroled pursuant to 8 U.S.C. § 1182(d)(5)[5] and given an Interim Notice

---

fraud or a willful misrepresentation of a fact on their application for admission," and (2) the noncitizen is either "arriving in the United States" and therefore, falls into "what is known as the 'Arriving Alien Provision,'" and/or has "not been admitted or paroled into the United States and ha[s] 'not affirmatively shown' to an immigration officer's satisfaction" that they have been continuously present in the United States for the preceding two years, and therefore falls into "what is known as the 'Designation Provision.'"  *Vazquez-Rosario*, 2026 WL 196505, at *3 (quoting *Rodriguez-Acurio v. Almodovar*, No. 25cv6065, 2025 WL 3314420, at *9 (E.D.N.Y. Nov. 28, 2025)).  "If the alien is deemed inadmissible and does not demonstrate an intent to apply for asylum or indicate a 'fear of prosecution or torture or fear of returning to their country of origin, the officer issues a Notice and Order of Expedited Removal,'" and the noncitizen is subject to mandatory detention until removal.  *Id*. (quoting *Rodriguez-Acurio*, 2025 WL 3314420, at *9).

[3] Section 1229a outlines the normal procedure for removal, including an inadmissibility proceeding before an immigration judge.  8 U.S.C. § 1229a(a)(1).

[4] Section 1182(a)(6)(A)(i) deems inadmissible any noncitizen who is "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."

[5] Section 1182(d)(5)(A) authorizes DHS to "parole into the United States temporarily under such conditions as [it] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).  Such parole is "not to be regarded as an admission" of the noncitizen and once the "purposes of such parole" are served, the noncitizen must "return or be returned to the custody from which he was paroled," with the understanding that his "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  *Id*.  This discretionary parole provision is the only exception to mandatory detention under § 1225(b).  *Vazquez-Rosario*, 2026 WL 196505, at *4 ("With the exception of discretionary parole under Section 1182(d)(5)(A), 'there are no other circumstances under which aliens detained under Section 1225(b) may be released.'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018)) (alteration adopted)).

2

Authorizing Parole, which was valid for one year and "automatically terminate[d] at the end of the one-year period." (Doc. No. 6-3 at 2.)

2. Petitioner has spent the last two years living with his aunt in Philadelphia, and during that time, has pursued asylum, held a job, attended church, and learned English. (Doc. No. 1 at 2.) On February 6, 2026—more than a year after the automatic termination of his parole—Petitioner was arrested by United States Immigration and Customs Enforcement ("ICE") during a "routine immigration check in." (*Id.*; Doc. No. 8 at 6.) He is currently detained at the Federal Detention Center ("FDC") in Philadelphia, where he is being held without the opportunity for a bond hearing. (Doc. No. 1-3 at 2.)

3. On February 8, 2026, Petitioner filed the instant Petition, in which he argues that habeas relief is warranted because his detention without a bond hearing pursuant to 8 U.S.C. § 1225(b)(2) violates the INA, the bond regulations promulgated pursuant to the INA, the Administrative Procedure Act ("APA"), and the Due Process Clause of the Fifth Amendment. (Doc. No. 1 at 24–31.) Petitioner argues that his detention should instead be governed by Section 1226(a), which requires discretionary detention and a bond hearing. (*Id.*) The Government[6] opposes the Petition, arguing that the Court should deny habeas relief because Petitioner is being held pursuant to the mandatory detention provisions of Section 1225(b)(1), not Section 1225(b)(2) or Section 1226(a). (Doc. No. 6 at 14–15; *see also id.* at 2 ("This petition is distinguishable from the numerous petitions recently considered by this Court in the wake of

---

[6] Petitioner names as Respondents two government entities: (1) DHS and (2) Executive Office of Immigration Review; and four government officials: (1) J.L. Jamison, Warden of the FDC; (2) Michael T. Rose, Acting Field Office Director of Enforcement and Removal Operations for ICE's Philadelphia Field Office; (3) Kristi Noem, Secretary of DHS; and (5) Pamela Bondi, United States Attorney General (collectively, the "Government"). (Doc. No. 1 at 1.)

the Board of Immigration Appeals' (BIA) decision in *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025), which, despite Petitioner's representations, is not implicated.").)

4. The Government's argument rests on the assumption that when Petitioner's parole automatically terminated, his legal status reverted to the one he had upon entry to the United States—an inadmissible "arriving alien" subject to expedited removal proceedings. And in support of that assumption, the Government relies on Section 1182(d)(5)(A), which states, "when the purposes of . . . parole have been served[,] the alien shall forthwith return *or be returned to the custody from which he was paroled* and thereafter, his case shall continue to be dealt with *in the same manner as that of any other applicant for admission* to the United States." (*Id.* at 12 (quoting 8 U.S.C. § 1182(d)(5)(A)).) The Government reads this section to mean that once parole is terminated, the noncitizen "return[s] to his initial custody status upon entry" into the country, which in this case would be mandatory detention pursuant to Section 1225(b)(1)(B)(ii). (*Id.*[7]) But this interpretation is contrary to the text of the statute. Section 1182(d)(5)(A) states that a parolee noncitizen shall be "returned to the custody from which he was paroled," *not* that he shall be returned to the status assigned to him at entry.[8] 8 U.S.C.

---

[7] The Government argues that its interpretation is supported by two immigration decisions. (Doc. No. 6 at 12 (citing *In re M-S-*, 27 I&N Dec. 509 (A.G. 2019) and *In re Q Li*, 29 I&N Dec. 66 (BIA 2025)).) But neither case involved the situation presented here, where a petitioner is initially placed in expedited removal proceedings, later moved to regular removal proceedings, paroled, and then arrested pursuant to the detention provision for expedited removal. Instead, *In re M-S-* involved a noncitizen who was placed in expedited removal proceedings before being moved to regular removal proceedings and detained during the duration of those proceedings. 27 I&N Dec. 509, 514 (A.G. 2019). In that case, the court found the detained noncitizen, who had never been paroled, was not entitled to a bond hearing. *Id.* *In re Q Li*, meanwhile, involved a noncitizen who was placed directly in regular removal proceedings before being paroled. 29 I&N Dec. 66, 70–71 (BIA 2025). The BIA found that when her parole terminated, the statute required that she be returned to the same custody status she had at the time of her initial parole—detention pursuant to § 1225(b)(2). *Id.* Although this holding suggests that a Petitioner arrested following termination of parole is subject to mandatory, not discretionary, detention (albeit under § 1225(b)(2), not § 1225(b)(1)), it does not suggest that a noncitizen returns to the status they had at the time of entry into the country when that status is different from the one they held at the time of parole.

[8] In many cases the parolee noncitizen's prior status is detention pursuant to the expedited removal proceedings because that is the status they held when paroled. *See Ibragimov v. Gonzales*, 476

§ 1182(d)(5)(A); *see also Vasquez-Rosario*, 2026 WL 196505, at *8 (rejecting the government's argument that at the expiration of parole, the noncitizen reverts back to the "position of an applicant for admission standing at the threshold to entry").

5.    Here, the Petitioner's status when he was paroled was that of an applicant for admission in regular removal proceedings. Although Petitioner was initially given a Notice and Order of Expedited Removal (Doc. No. 6-1 at 2), that order was *vacated* just a few days after issuance, and on December 14, 2023, Petitioner was issued a Notice to Appear consistent with regular removal proceedings (Doc. No. 6-2 at 2; *see id.* (indicating that Petitioner is charged as "an alien present in the United States who has not been admitted or paroled" and *not* checking the box to charge him as "an arriving alien")). *See Vazquez-Rosario*, 2026 WL 196505, at *6 (noting that rather than removing the petitioner from the United States in an "expedited fashion," DHS "issued him an updated Notice to Appear" on Form I-862 and concluding that "[t]herefore, from November 14, 2022 up until his arrest on December 31, 2025, DHS did not treat [the petitioner] as if he were subject to mandatory detention and expedited removal proceedings").

6.    Accordingly, the Court rejects the Government's arguments that Petitioner reverted back to expedited removal proceedings upon the termination of his parole and that he is therefore currently detained pursuant to Section 1225(b)(1).[9] The Government does not argue

---

F.3d 125, 136–37 (2d Cir. 2007) (finding the noncitizen parolee's "status reverted to that which he held *at the time he was paroled* into the United States in July 1998—namely, that of an 'arriving alien' seeking admission at our borders" (emphasis added)). But that is not the situation presented in this case.

[9] The Government does not argue that Petitioner qualifies anew for expedited removal. And any such argument would be questionable at best, given that Petitioner has been present in the country for more than two years and was previously paroled. *See, e.g.*, *Vasquez-Rosario*, 2026 WL 196505, at *8 (finding neither the Arriving Alien Provision nor the Designation Provision applied because at the time of the petitioner's arrest, he was not "in the process of 'arriving' in the United States" and his previous parole foreclosed expedited proceedings under the Designation Provision).

that Petitioner is being held pursuant to Section 1225(b)(2).[10]  Accordingly, Petitioner's "detention is discretionary and governed by Section 1226(a), which 'applies to aliens already present in the United States.'" *Vasquez-Rosario*, 2026 WL 196505, at *10 (citing *Jennings*, 583 U.S. at 303).  Because Petitioner has not been given the bond hearing required by Section 1226(a), his continued detention violates the INA.[11]

For those reasons, it is **ORDERED** that the Petition is **GRANTED** as follows:

1.      Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(1), and is instead subject to detention, if at all, pursuant to the discretionary provisions of 8 U.S.C. § 1226(a).

2.      The Government shall **RELEASE** Petitioner from custody immediately.  Counsel shall certify compliance with this Order by filing on the docket no later than **5:00 p.m.** on **February 20, 2026.**

3.      The Government is temporarily enjoined from re-detaining Petitioner for seven days following his release from custody.

4.      If the Government pursues re-detention of Petitioner after that seven-day period, it must first provide him with a bond hearing, at which an immigration judge shall determine whether detention is warranted pending the resolution of Petitioner's removal proceedings. Pending that bond hearing, the Government cannot remove, transfer, or otherwise facilitate the removal of Petitioner from the Eastern District of Pennsylvania before the ordered bond hearing.

---

[10] Any such argument would almost certainly fail for the reasons outlined by hundreds of courts in this District and across the country.  *See generally, e.g.*, *Kourouma v. Jamison*, No. 26cv182, 2026 WL 120208 (E.D. Pa. Jan. 15, 2026); *Ndiaye v. Jamison*, No. 25cv6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025); *Kashranov v. Jamison*, No. 25cv5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); *Cantu-Cortes v. O'Neill*, No. 25cv6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025).

[11] Because the Court finds Petitioner is entitled to habeas relief on his INA claim, we need not consider his arguments that detention violates the INA bond regulations, APA, and Due Process Clause.

If the immigration judge determines that Petitioner is subject to detention under 8 U.S.C. § 1226(a), the Government may request permission from this Court to move Petitioner if unforeseen or emergency circumstances arise that require him to be removed from the District. Any such request must include an explanation for the request as well as the proposed destination. The Court will then determine whether to grant the request and permit transfer.

5. The Clerk of Court shall mark this matter **CLOSED.**

**IT IS SO ORDERED.**

/s/*Karen Spencer Marston*
_____
**KAREN SPENCER MARSTON, J.**